## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT J. SCHUCKIT, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>PHILIPS NORTH AMERICA, LLC, PHILIPS HEALTHCARE INFORMATICS, INC., RESPIRONICS, INC., and KONINKLIJKE PHILIPS ELECTRONICS N.V.,<br><br>    Defendants. | Case No.: 21-11088<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## <u>INTRODUCTION</u>

1.      This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of purchasers of Philips Continuous Positive Airway Pressure ("CPAP"), Bi-Level Positive Airway Pressure ("PAP") and mechanical ventilator devices (together, "PAP Machines") developed, manufactured, and distributed by Defendants with a defective foam component that can degrade and emit harmful chemicals resulting in serious health risks to consumers, including the risks of developing Type 2 Diabetes, heart problems and cancer.

2.      Defendants have long known that the polyester-based polyurethane ("PE-PUR") sound abatement foam in the PAP Machines had a propensity to degrade and emit harmful chemicals (the "Defect"), yet it chose to withhold that information from millions of consumers who rely on the PAP Machines to treat their serious sleep disorders.

3.      Not only did Defendants fail to disclose this known Defect and the health risks it posed to Plaintiff and class members, but they also actively concealed the Defect from consumers—while continuing to manufacture, market and distribute the PAP Machines, to the detriment of millions of consumers.

4.      Then, long after learning of the Defect, Defendants first chose to update their shareholders of the serious health consequences posed by the PAP Machines, and only months later, to issue a recall of the machines. Even then, Defendants have yet to issue notice directly to the millions of consumers who rely on the machines to treat their serious medical condition.

5.      As a result of the Defect and considerable costs associated with finding substitute treatment for Plaintiff's and members' sleep disorders—indeed, Defendants have made clear it will take "some time" to offer any repair or replacement—Plaintiff and class members have suffered injury in fact, incurred damages, and otherwise been harmed by Defendants' conduct.

6.      Defendants' conduct violates the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-0.1, *et seq.* and constitutes a breach of express and implied warranties.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) because: (i) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (ii) Plaintiff and members of the proposed class are citizens of states different from Philips' home states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants Philips North America LLC and Philips Healthcare Informatics, Inc. transact business in this District, maintain their corporate headquarters in this District, are subject to personal jurisdiction in this District, and therefore are deemed citizens of this District. Additionally, the Defendants receive substantial revenue and profits from sales of PAP Machines in this District. A substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

9.     This Court has personal jurisdiction over Defendants Philips North America LLC and Philips Healthcare Informatics, Inc. because they operate in this District.

10.     The Court has personal jurisdiction over all Defendants, because they conduct substantial business in the District and they have intentionally and purposefully placed PAP Machines into the stream of commerce within Massachusetts and throughout the United States.

## THE PARTIES

11.     Plaintiff Robert J. Schuckit is a citizen of the State of Indiana.

12.     Plaintiff owns a DreamStation Auto CPAP with humidifier, and a cellular modem (model no. DSX500H11C, serial no. J192858140274) that was manufactured by Philips on June 12, 2017, well-within the five-year period after which Philips recommends replacement.

13.     Plaintiff's CPAP machine is affected by the Defect. His machine is medically necessary to treat his sleep disorder, and until he learned about the recall, Plaintiff used

his CPAP machine regularly

14.     Plaintiff was not notified by Defendants about the recall of his CPAP machine.

15.     Defendant Philips North America LLC ("Philips North America") is a Delaware LLC with its principal place of business at 222 Jacobs Street, Cambridge MA, 02141.

16.     Defendant Philips Healthcare Informatics, Inc. ("Philips Healthcare"), a division of Philips North America, LLC, is a Delaware corporation with its principal place of business at 222 Jacobs Street, Cambridge MA, 02141.

17.     Defendant Respironics, Inc. ("Philips Respironics") is a Delaware corporation with a principal place of business at 1001 Murry Ridge Lane, Murrysville, PA 15668 USA.

18.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a foreign corporation, with its principal place of business at Philips Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. Royal Philips is the parent corporation of Defendants Philips North America, Philips Healthcare and Philips Respironics.

## FACTUAL ALLEGATIONS

### A.  Philips PAP Machines

19.     Defendants Philips North America, Philips Healthcare, Philips Respironics and Royal Philips ("Defendants" or "Philips") are collectively in the business of developing, manufacturing, selling, supporting, maintaining, and servicing devices for sleep and respiratory care, including the defective PAP Machines.

20.     Philips' PAP Machines treat sleep apnea, a "potentially serious sleep disorder in which breathing repeatedly stops and starts."[1] The Mayo Clinic identifies sleep apnea as a "serious medical condition" which can result in complications from daytime fatigue to higher risk for Type 2 Diabetes, high blood pressure or heart problems and surgery complications. *Id.*

21.     Positive airway pressure ("PAP") therapy refers to "all sleep apnea treatments that use a stream of compressed air to support the airway during sleep."[2] PAP therapy involves a "portable machine"; patients wear a mask during sleep and the machine "gently blows pressurized room air from into your upper airway through a tube connected to the mask. This positive airflow helps keep the airway open, preventing the collapse that occurs during apnea, thus allowing normal breathing." *Id.*

22.     Philips offers three types of PAP machines: CPAP machines, Auto-Adjusting machines, and BiPAP bi-level machines. CPAP provides "one level of pressure to your upper airway throughout the night."[3] Auto-adjusting machines "provide[ ] a variable pressure throughout the night based on your needs and sleep stage." *Id.* And BiPAP bi-level machines "provide[ ] two levels of pressure throughout the night, your prescribed pressure on the inhale and a lower pressure on the exhale." *Id.*

23.     Philips advertises itself as a trusted brand and "global leader in the sleep

---

[1] Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/sleep-apnea/symptoms-causes/syc-20377631 (accessed on June 24, 2021)

[2] Stanford Sleep Medicine Center, https://stanfordhealthcare.org/medical-treatments/p/positive-airway-pressure-therapies.html (accessed on June 24, 2021)

[3] Philips, https://www.usa.philips.com/c-e/hs/sleep-apnea-therapy/i-currently-use-sleep-apnea-therapy/sleep-apnea-machines.html (accessed on June 24, 2021)

and respiratory markets." *See* http://www.respironics.com/us_en. Its branding promises consumers that they will "[b]reath easier, sleep more naturally[.]" http://www.respironics.com/product_library.

24.     Philips further assures consumers that its "sleep therapy systems are designed with the needs of care practitioners and patients in mind," and that its "quality systems reflect [Philips] commitment to providing exceptional therapy," among other things.  https://www.usa.philips.com/healthcare/solutions/sleep. And it has long advertised its PAP Machines as "clinically proven" treatment for sleep disorders.

25.     Philips boasts that it has the "most prescribed CPAP systems by U.S. sleep physicians." *See*   https://www.usa.philips.com/healthcare/solutions/sleep/sleep-therapy (citing 2016 Philips survey).

26.     The PAP Machines can cost hundreds, even thousands, of dollars per machine.

**B.  Recall of Defective Philips PAP machines**

27.     On June 14, 2021, Philips issued an "urgent" recall of numerous models of its PAP Machines, in which it acknowledged that the Defect can cause "serious injury which can be life-threatening, cause permanent impairment, and/or require medical intervention to preclude permanent impairment." *See* Exhibit A (Philips Recall Notification). The PE-PUR sound abatement foam can "degrade into particles" which can then "enter the device's air pathway and be ingested or inhaled by the user" and can "off-gas certain chemicals" into the consumer. *Id.*

28.     The recall affects millions of machines—and importantly, the millions of

consumers who rely on those machines—manufactured before April 26, 2021. Twenty

models of Philips' PAP Machines have been recalled:

Affected Devices

| All Devices manufactured before 26 April 2021, All serial numbers | |
|---|---|
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | E30 (Emergency Use Authorization) |
| Continuous Ventilator, Non-life Supporting | DreamStation ASV |
| | DreamStation ST, AVAPS |
| | SystemOne ASV4 |
| | C-Series ASV |
| | C-Series S/T and AVAPS |
| | OmniLab Advanced+ |
| Noncontinuous Ventilator | SystemOne (Q-Series) |
| | DreamStation |
| | DreamStation Go |
| | Dorma 400 |
| | Dorma 500 |
| | REMstar SE Auto |

| All Devices manufactured before 26 April 2021, All serial numbers | |
|---|---|
| Continuous Ventilator | Trilogy 100 |
| | Trilogy 200 |
| | Garbin Plus, Aeris, LifeVent |
| Continuous Ventilator, Minimum Ventilatory Support, Facility Use | A-Series BiPAP Hybrid A30 (not marketed in US) |
| | A-Series BiPAP V30 Auto |
| Continuous Ventilator, Non-life Supporting | A-Series BiPAP A40 |
| | A-Series BiPAP A30 |

29.    Health risks from exposure to the degraded foam include "headache,

irritation, inflammation, respiratory issues, and possible toxic and carcinogenic effects."

And the risks from "chemical exposure due to off-gassing" include: "headache, irritation,

hypersensitivity, nausea/vomiting, and possible toxic and carcinogenic effects." Ex. A.

30.    Notwithstanding Philips' concerted effort to downplay these risks, it has

advised consumers who use the CPAP and BiLevel PAP machines to immediately

"discontinue use" and consult their physicians. Ex. A. And as to recalled "life-sustaining"

ventilators, Philips acknowledges "alternate ventilator options for therapy may not exist

or may be severely limited for patients who require a ventilator for life-sustaining

therapy. *Id.*

31.    Thus, the PAP Machines present a danger to consumers—making them entirely useless to Plaintiff and members of the class.

**C. Philips' Knowledge and Concealment of the Defect**

32.    Philips first publicly acknowledged the Defect on April 26, 2021 by issuing an "update" to its shareholders where it which admitted the "potential health risks related to [the] sound abatement foam" in its PAP Machines in its April 26, 2021 Quarterly Report. In that Report, the CEO of Royal Philips, Frans van Houten, downplayed the medically serious Defect, saying "we have identified a quality issue in a component that is used in certain sleep and respiratory care products …." https://www.results.philips.com/#ceo.

33.    Upon information and belief, Philips did not communicate this "update"—or any information about the serious health risks posed by its PAP Machines—to anyone except its shareholders.

34.    Four weeks before it issued the recall, it stopped shipments of the PAP Machines. And months after notifying its shareholders of the Defect, it issued the recall.

35.    Philips is evasive on when it first learned of the Defect, but it admits to receiving "user reports" and complaints about the Defect and to conducting testing that confirmed the potentially serious health consequences from the defective PE-PUR sound abatement foam.

36.    Upon information and belief, Philips has known about this problem for years. For years, Philips has been hearing from and about consumers who were exposed to black particles and experiencing the physical symptoms that Philips now publicly

acknowledges as a consequence of the Defect. *See* Ex. A.

37.     Although Philips finally issued the recall notice on June 14, 2021, it did not send the notice directly to the consumers who rely on its PAP Machines.  Rather, it issued online notice, which directs "patients, users and caregivers" to register their units and "begin a claim" for affected units. Ex. A.

38.     The claims process is not sufficient. Consumers who go through the claims process, are essentially told that they can expect no resolution for "some time." Philips vaguely references "regulatory approval" as the obstacle to remedying these devices that are necessary to millions of consumers who rely on them for their care:



39.     Rather, Philips relies on empty promises that it has a "comprehensive plan to replace the current sound abatement foam with a new material that is not affected by this issue, and has already begun this process."

40.     And while consumers wait—their serious health treatment put in indefinite limbo—Philips acknowledges that its next-generation CPAP machines are "not affected

by the issue," without indicating that consumers with affected CPAP machines will be provided the newer, safer version.

**D. Fraudulent Concealment Tolling**

41.     Philips has known about the Defect while continuously marketing and selling the defective PAP Machines to unsuspecting consumers and representing to those consumers that the machines are safe and "clinically proven."

42.     Thus, despite its knowledge about the Defect, Philips failed to disclose and rather, concealed this material information from Plaintiff and class members, while continuing to market the PAP Machines as safe for consumers.

43.     Plaintiff and other members of the class justifiably relied on Philips to disclose the Defect in the PAP Machines that they purchased, because that defect was not discoverable by them through reasonable efforts.

44.     Any applicable statute of limitations has been tolled by Philips' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

**E. Discovery Tolling**

45.     While Philips withheld information about the Defect, Plaintiff and class members continued using the PAP Machines, having no basis, through exercise of reasonable diligence or otherwise, to discover the Defect or the resulting and serious risk of negative health consequences before the issuance of the June 14, 2021 recall notice.

46.     Nor is the recall notice sufficient, issued online and not sent directly to purchasers of the affected machines, to put Plaintiff and class members on notice of the Defect.

47.     Plaintiff and the other class members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Philips intentionally failed to disclose material information within its knowledge about a dangerous defect to consumers worldwide.

48.     As such, no potentially relevant statute of limitations should be applied.

**CLASS ACTION ALLEGATIONS**

49.     Plaintiff brings this action on his own behalf, and on behalf of the following class and subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass consist of the following:

**Nationwide Class:**

All persons in the United States who have purchased the PAP Machines.

Or, in the alternative,

**Indiana Subclass:**

All persons in Indiana who have purchased the PAP Machines.

50.     Together, the Nationwide Class and Indiana Subclass will be referred to collectively as the "Class." Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the PAP Machines for resale, and the Judge(s) assigned to this case.

51.     Plaintiff reserves the right to modify, change or expand the Class definitions.

52.     <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of

individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Philips acknowledges that millions of PAP Machines, and thus millions of consumers, are affected.

53.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.  Whether Defendants' PAP Machines are predisposed to the Defect;

b.  Whether Defendants knowingly failed to disclose the existence and cause of the Defect in the PAP Machines;

c.  Whether Defendants misrepresented the PAP Machines as safe;

d.  Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

e.  Whether Defendants' statements, concealments and omissions regarding the PAP Machines were material to a reasonable consumer;

f.  Whether the PAP Machines were unfit for the ordinary purposes for which they were used;

g.  Whether the PAP Machines have been rendered valueless or suffered a diminution of value as a result of the Defect;

h.  Whether Defendants' conduct tolls any or all applicable limitations periods;

i.  Whether the Defect is latent or hidden, such that Plaintiff and members of the Class could not reasonably discover it;

j.  Whether Defendants' conduct constitutes a breach of express warranty;

k.  Whether Defendants' conduct constitutes a breach of implied warranty;

l.   Whether Defendants' conduct violates the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-0.1 *et seq.*;

m.   Whether Defendants have been unjustly enriched by the conduct alleged herein;

n.   Whether Plaintiff and the members of the Class are entitled to damages on the Counts where damages are an available remedy; and

o.   Whether Plaintiff and member of the Class are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be proper.

54.   <u>Typicality</u>: Plaintiff's claim is typical of the claims of the Class since he purchased machine that contains the same PE-PUR foam Defect contained in the affected machines of all members of the Class. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

55.   <u>Adequacy</u>: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

56.   <u>Predominance and Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and Class members because questions of law and fact common to all class members predominate over questions affecting any individual class members. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, Class members can be readily identified and notified based on,

*inter alia*, Defendants' records of PAP Machine sales, and other of Defendants' records.

57.     Ascertainability: Members of the Class are ascertainable, because they are defined by the objective criteria of having purchased a PAP Machine, and they will be readily identifiable through Defendants' records.

58.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS

### COUNT I
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the Indiana Subclass)**

59.     Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth in this paragraph.

60.     Philips expressly warranted to Plaintiff and Class members that the PAP Machines were of high quality, were safe and would work properly.

61.     Plaintiff and members of the Class relied on these express warranties when choosing to purchase the PAP Machines.

62.     Defendants breached the express warranty by selling to Plaintiff and Class members PAP Machines which, at the point of sale, were not of high quality, were not safe and did not work properly, but rather contained a defective component that renders the PAP Machines dangerous, and therefore, unusable.

63.     Upon information and belief, Defendants knew or had reason to know that

the PAP Machines contained the Defect when it sold the machines to Plaintiff and Class

Members, and they failed to inform Plaintiff and Class members of the Defect. Further,

Defendants induced Plaintiff and Class members to purchase the PAP Machines under

false and/or fraudulent pretenses.

64.     Plaintiff and Class members purchased PAP Machines that contained the

Defect, that was undiscoverable by them at the time of purchase.

65.     As a result of the Defect in the PAP Machines, Plaintiff and Class members

have suffered economic damages including but not limited the cost of the defective

device, loss of device use and other related damage.

66.     Thus, Defendants' attempt to limit or disclaim express warranties in a

manner that would exclude coverage of the Defect is unenforceable and void.

67.     Recovery by the Class is not restricted to any written warranties promising

to repair and/or correct defects, and they seek all remedies as allowed by law.

68.     As a direct and proximate result of Defendants' breach of its express

warranties, Plaintiffs and Class members received goods that have substantially impaired

value and have suffered damages in an amount to be determined at trial.

## <u>COUNT II</u>
### Breach of the Implied Warranty of Merchantability
### (On Behalf of the Nationwide Class or, Alternatively, on Behalf of the Indiana Subclass)

69.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully

set forth in this paragraph.

70.     Philips, as the developer, manufacturer, marketer, distributor, and/or

seller of the defective PAP Machines impliedly warranted to Plaintiff and Class members that its PAP Machines were fit for their intended purpose in that they would be safe when used to treat Plaintiff's and Class members' sleep disorders.

71.     Philips breached the warranty implied in the contract for the sale of the PAP Machines in that the machines were unfit for their intended and ordinary purpose of treating consumers' sleep disorders, and rather exposed Plaintiff and Class members to significant health risks.

72.     As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Philips to be merchantable.

73.     Plaintiff and members of the Class are the intended beneficiaries of Philips' implied warranties.

74.     In reliance upon Philips' skill and judgment and the implied warranties, Plaintiff and members of the Class purchased the PAP Machines for use as a safe device to treat their sleep disorders.

75.     The PAP Machines were not altered by Plaintiff or the members of the Class.  Any changes to the machines made by members of the Class constituted expected and ordinary use of a PAP device.

76.     The PAP Machines were defective when they left the exclusive control of Philips.  The PE-PUR foam always posed an unreasonable risk of degrading, exposing consumers to serious health risks.

77.     The PAP Machines were defectively designed and/or manufactured and unfit for their intended purpose, and Class members did not receive the goods as

warranted.

78.     Plaintiff and Class members purchased PAP Machines that contained the

Defect, which was undiscoverable by them at the time of purchase.

79.     As a result of the Defect in the PAP Machines, Plaintiff and Class members

have suffered economic damages including but not limited the cost of the defective

device, loss of device use and other related damage.

80.     Thus, Defendants' attempt to limit or disclaim the implied warranties in a

manner that would exclude coverage of the Defect is unenforceable and void.

81.     As a result of Defendants' breach of its implied warranties, Plaintiffs and

Class members have been damaged in an amount to be proven at trial and are entitled to

incidental, consequential, and other damages and other legal and equitable relief, as well

as costs and attorneys' fees, available under law.

## COUNT III
### Unjust Enrichment
**(On Behalf of the Nationwide Class or, Alternatively, on Behalf of the Indiana
Subclass)**

82.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as if fully

set forth in this paragraph.

83.     This claim is brought in the alternative to Plaintiff's warranty claims.

84.     As a result of Philips' material deceptive advertising, marketing and sale of

the PAP Machines, Philips was enriched at the expense of Plaintiff and the Class through

their purchase of the machines, because the machines were not "clinically proven" and

safe and did not work properly despite Philips' representations to the contrary.

85.     Philips had knowledge of the benefit it incurred at the expense of Plaintiff and members of the Class, because Philips knew that the PAP Machines did not perform or operate as advertised.

86.     Under the circumstances, it would be against equity and good conscience to permit Philips to retain the ill-gotten benefits it received from Plaintiff and the Class as the result of its deceptive marketing and advertising practices.  Thus, it would unjust and inequitable for Philips to retain the benefit without restitution to Plaintiff and the Class.

## COUNT IV
### Violation of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-0.1 *et seq.*
### (On Behalf of the Indiana Subclass)

87.     Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth in this paragraph.

88.     Defendants are "persons" as that term is defined at Ind. Code § 24-5-0.5-2(a)(2).

89.     Defendants are "suppliers" as that term is defined at Ind. Code § 24-5-0.5-2(a)(3).

90.     Sales of the PAP Machines by Defendants to Plaintiffs and Class members constitute "consumer transactions" as that term is defined at Ind. Code § 24-5-0.5-2(a)(1).

91.     Defendants engaged in unfair and deceptive acts in violation of the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-0.1 *et seq.*, by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members

the Defect. These acts and practices violate, at a minimum, the following sections of the

Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3:

> (b) [T]he following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:
>
> > (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have;
> >
> > (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

92.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

93.     Defendants knew that the PAP Machines were prone to the Defect, making them susceptible to failure for their essential purpose, and that they would become useless as a result of reasonable and foreseeable use by consumers.

94.     Defendants were under a duty to Plaintiff and the Class members to disclose the Defect within the PAP Machines because:

> a.     Defendants were in a superior position to know the true state of facts about the Defect within the PAP Machines;
>
> b.     Plaintiff and Class members could not reasonably have been expected to learn or discover that the PAP Machines contained the Defect and thus were not in accordance with Defendants' advertisements and representations;
>
> c.     Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the Defect within the PAP Machines; and

d.   Defendants actively concealed and failed to disclose the Defect within the PAP Machines from Plaintiff and the Class.

95.   In failing to disclose the Defect within the PAP Machines at the time of sale, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

96.   The facts concealed or not disclosed by Defendants to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' PAP Machines. Had Plaintiff and the Class known about the Defect within the PAP Machines, they would not have purchased the PAP Machines or would have paid less for them.

97.   Defendants' violations were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable deceptive acts or omissions under the Indiana Deceptive Consumer Sales Act.

98.   Defendants' violations are also uncured deceptive acts under the Indiana Deceptive Consumer Sales Act because a consumer who has been damaged by the act has given notice to Defendant of the violation and the Defendant has made no offer to cure the defect.

99.   The Indiana Deceptive Consumer Sales Act provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages

of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." Ind. Code § 24-5-0.5-4(a).

100.    The Indiana Deceptive Consumer Sales Act provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member . . . ." Ind. Code § 24-5-0.5-4(b).

101.    Plaintiff's and the other Class members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

102.    Therefore, Plaintiff and the other Class members are entitled to damages and equitable relief under the Indiana Deceptive Consumer Sales Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully request that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.      appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.      award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  June 30, 2021                    Respectfully submitted,


/s/ John Roddy
John Roddy (BBO No. 424240)
Elizabeth Ryan (BBO No. 549632)
Bailey & Glasser LLP
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
jroddy@baileyglasser.com
eryan@baileyglasser.com

Irwin B. Levin*
Richard E. Shevitz*
Natalie Lyons*
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
rshevitz@cohenandmalad.com
ilevin@cohenandmalad.com
nlyons@cohenandmalad.com

*pro hac vice* to be filed

*Counsel for Plaintiff and the proposed Class*